UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
VINCENT HURLEY                                    :
                                                  :
                Petitioner,              :
                                                  :    08 CIV 00362 (HB)
        -against-                              :
                                                  :    AMENDED OPINION &
LUIS MARSHALL, Superintendant                     :    ORDER
Sing Sing Correctional Facility,                  :
                                                  :
                Respondent.              :
------------------------------------------------------------------x
**Hon. HAROLD BAER, JR., District Judge:[1]**

      Vincent Hurley ("Hurley" or "Petitioner") petitions this Court to vacate his sentence pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Report and Recommendation of Hon. Theodore H. Katz, United States Magistrate Judge, is adopted and the petition is denied.

## I.  INTRODUCTION

      On October 17, 2007, *pro se* Petitioner Vincent Hurley filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that: (1) the District Attorney's Office improperly withheld material evidence at trial in violation of Brady v. Maryland, 373 U.S. 83 (1963); (2) Petitioner was denied effective assistance of trial counsel; (3) Petitioner was denied ineffective assistance of appellate counsel; (4) the trial court improperly denied Petitioner's motion for severance; and (5) the trial court improperly received a shotgun into evidence. Petitioner filed an amended petition on February 17, 2009. On July 1, 2009, the government moved to dismiss, on the theory that the petition was procedurally barred as untimely under the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2244(d)(1) ("AEPDA"), which requires habeas corpus petitioners to file no later than one year after conviction. Petitioner filed a Traverse to the Motion to Dismiss on August 24, 2009, arguing that he had timely filed—and even if he had not, that the statute of limitations did not apply to him.

      On September 1, 2009, this Court referred the case to Magistrate Judge Katz for a Report and Recommendation ("R&R"). In his R&R, Magistrate Judge Katz recommends the dismissal

---

[1] Stephen Mar, a second year law student at New York University School of Law, and a 2010 intern in my Chambers, provided substantial assistance in researching and drafting this Opinion.

1

of the petition because (1) Petitioner's action is time-barred; and (2) neither statutory nor equitable tolling of the statute of limitations is available to Petitioner.  In Petitioner's Reply and Objection to the R&R ("Reply to the R&R"), he concedes that statutory tolling is unavailable, but maintains that equitable tolling is appropriate because of his "actual innocence."  Petitioner also argues further that equitable tolling applies to his situation because the prosecution "lulled" him into inaction.  This Court adopts Magistrate Judge Katz's R&R and denies the petition as time-barred.

## II.     BACKGROUND

The facts that follow are described more fully in Judge Katz's R&R, which is incorporated herein by reference.  On July 5, 1989, Petitioner was convicted following a jury trial in New York State Supreme Court, New York County, on four counts:  (1) Attempted Assault in the First Degree; (2) Criminal Possession of a Weapon in the Second Degree; (3) Criminal Possession of a Controlled Substance in the Fourth Degree; and (4) Criminal Trespass in the First Degree.[2]  The Court sentenced Petitioner to five terms of 20 years to life and two terms of 3 1/2 to 7 years, all to run concurrently.  The Appellate Division affirmed Petitioner's conviction on March 31, 1994, and the New York Court of Appeals denied Petitioner leave to appeal on June 28, 1994.

Between 1994 and 1997, Petitioner filed three motions to vacate his conviction pursuant New York Criminal Procedure Law section 440 as well as two motions for a writ of error *coram nobis*.  Petitioner filed no further motions until October 2002, when he moved to renew one of his prior section 440 motions.  During this interim period, however, he submitted two Freedom of Information Law ("FOIL") requests to the New York City Police Department and New York County District Attorney's Office, in 2000 and 2001, respectively, in an effort to obtain evidence that could help overturn his conviction.  As Magistrate Judge Katz noted in his R&R, the Government has successfully argued that each of Petitioner's post-conviction motions about Brady evidence is meritless and that the "newly discovered" evidence does not support Petitioner's actual innocence claim.

Petitioner's central claim is that the statutory period should be equitably tolled under the actual innocence doctrine.  In support of this theory, Petitioner relies heavily on a four-page

---

[2] Petitioner was sentenced as a persistent violent felony offender.

report he obtained through a FOIL request on September 12, 1990 ("Honeyman Report"), which includes a one-page ballistics summary of the weapon Petitioner was convicted of possessing. At the end of the ballistics summary, Detective Honeyman noted that the weapon was "processed with negative results"—and Petitioner claims that these unknown "negative results" could potentially prove his innocence.  Petitioner further alleges that the prosecution withheld the Honeyman Report and other information in violation of Brady, and that together these facts justify the circumvention of the one-year statute of limitations.  The Government filed a Motion to Dismiss on July 1, 2009 on the basis that the petition had been untimely filed.  On July 2, 2009, this Court sent Petitioner a letter requiring him to respond why the petition should not be dismissed as untimely.  On August 27, 2009, Petitioner submitted a Traverse to the Motion to Dismiss in which he maintains his innocence and continues to allege that the prosecution withheld Brady evidence central to his claim.

In the attached R&R, Magistrate Judge Katz recommends the dismissal of the Petition as untimely.  Judge Katz explains carefully and thoroughly why statutory and equitable tolling are both unavailable to Petitioner:  Statutory tolling is foreclosed because the one-year limitations period has expired by over a decade, and Petitioner has failed to meet the high bar necessary to justify equitable tolling.  In his Reply to the R&R, Petitioner more clearly articulates his claims of actual innocence and withholding of Brady evidence; Petitioner also raises a new claim—that he was "lulled" into inaction by the Government's withholding of evidence.

## II.     STANDARD OF REVIEW

A district court has discretion to "accept, reject, or modify" the findings and recommendations of a magistrate judge, 28 U.S.C. § 636(b)(1), and may accept such findings and recommendations so long as there is no "clear error on the face of the record."  Wilds v. United Parcel Service, Inc., 262 F. Supp. 163, 169 (S.D.N.Y. 2003).  A magistrate judge's findings need not be accorded presumptive weight—a district court is "free to follow it or wholly to ignore it," Mathews v. Weber, 423 U.S. 261, 271 (1976), and may even "conduct the review [of the case] in whole or in part anew."  Id.  In other words, the court may "give the magistrate's recommendation whatever weight the judge decides it merits."  Id. at 273.  Finally, a district court is specifically authorized to apply *de novo* review to "those issues [in the magistrate judge's report] upon which the parties raised objections."  Hynes v. Squillace, 143 F.3d 653, 656 (2d Cir. 1998).

In this case, Judge Katz thoroughly responded to the statutory tolling claim and explains why Petitioner's equitable tolling claims are normally precluded. However, this Court examines Petitioner's "actual innocence" claim *de novo* in order to apply the four-step test required by the Second Circuit. Additionally, insofar as Petitioner raised arguments in his Reply to the R&R that are either new or newly articulated, this Court applies *de novo* review.

### III.     DISCUSSION
#### A.     Statutory Tolling
##### 1.     Petitioner's Explicit Statutory Tolling Claim

Under the AEPDA, an individual must file a habeas petition no later than one year from the date "on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1). Petitioner's conviction became final on September 28, 1994, ninety days after the New York Court of Appeals denied leave to appeal on June 28, 1994. People v. Hurley, 83 N.Y.2d 968, 968 (1994). Thus, under the one-year statute of limitations, Petitioner would have been required to petition for habeas relief by September 28, 1995. However, if a party's conviction became final prior to AEDPA's implementation on April 24, 1996, that party has a "one-year grace period," or until April 24, 1997, to file a habeas petition. Ross v. Artuz, 150 F.3d 97, 102–03 (2d Cir. 1998). Because the final date of Petitioner's conviction predated the AEDPA's implementation by almost two years, Petitioner had until April 24, 1997 to file his habeas petition. In his Reply to the R&R, Petitioner does not dispute that he failed to file until over a decade after the limitations period had expired; and he concedes that statutory tolling is unavailable.

##### 2.     Petitioner's Implicit Statutory Tolling Claim

Petitioner also makes a second statutory claim. Under 28 U.S.C. § 2244(d)(1)(D), a party may apply for a writ of habeas corpus within one year of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Id. Although Petitioner does not cite § 2244(d)(1)(D) explicitly, he impliedly invokes the provision by claiming that the "factual predicate" of his habeas claim did not arise until after his conviction. Specifically, Petitioner argues that his numerous FOIL requests serve as the factual predicate for his 2007 habeas petition. In his evaluation of Petitioner's § 2244(d)(1)(D) claim, Judge Katz notes that Petitioner had access to the Honeyman Report, which Petitioner claims to be the factual predicate for his post-conviction litigation, since September 1990. Further, the petition would have been untimely even if this Court presumed, rather

4

generously, that the evidence Petitioner obtained via his latest FOIL request in 2005 comprises the "factual predicate" for Petitioner's habeas claim. Even if that were the case, Petitioner would have had to file his habeas petition by 2006, which he failed to do.

Furthermore, the Honeyman Report is the only document obtained through FOIL request that could reasonably be said to qualify as a factual predicate for his habeas claim. Petitioner cannot sufficiently explain how any of the documents he received after the Honeyman Report creates a cognizable predicate for his habeas claim, whereas he cites the "negative results" language from the Honeyman Report several times in his objections to the R&R. Second, courts have held that FOIL requests cannot serve to toll the limitations period—if such a tactic were allowed, then parties could continuously and indefinitely toll the limitations period by making periodic FOIL requests, thus creating "undue delays in federal habeas review." Smith, 208 F.3d at 17. Allowing Petitioner to count any of his various FOIL requests as the "factual predicates" for his habeas claim would transform § 2244(d)(1)(D) from a statutory remedy to a "statutory right to an extended delay" under which Petitioner could indefinitely "gather[ ] every possible scrap of evidence" to support his claim. Sorce v. Artuz, 73 F. Supp. 2d 292, 294–95 (E.D.N.Y. 1999) (quoting Lucidore v. N.Y. State Div. of Parole, 1999 WL 566362, at *5 (S.D.N.Y. Aug. 3, 1999)).

Whether this Court measures the limitations period from the date Petitioner's judgment became final or the date Petitioner received the Honeyman Report, the petition is untimely by several years. Thus, this Court rejects Petitioner's statutory tolling claims and adopts the relevant portions of Judge Katz's R&R.

### B. Equitable Tolling

Equitable tolling is a "rare and exceptional" judicial remedy that allows a court to pause the limitations period for some reason not specifically authorized by statute. See Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (quoting Turner v. Johnson, 177 F.3d 390, 391–92 (5th Cir.), *cert. denied*, 528 U.S. 1007 (1999)). Indeed, the Second Circuit has recognized "only a limited number of circumstances that may merit equitable tolling." Baldayaque v. United States, 338 F.3d 145, 159 (2d Cir. 2003). The burden of proof for equitable tolling is steep: A petitioner must prove that (1) "extraordinary circumstances" prevented the petition from being filed on time; and (2) the petitioner acted with "reasonable diligence" throughout the period he sought to toll. Id. (citing Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996)). The two

requirements are interrelated:  The petitioner must demonstrate "a causal relationship between the extraordinary circumstances . . . and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances."  Baldayaque v. United States, 338 F.3d 145, 150 (2d Cir. 2003) (quoting Hizbullahankhamon v. Walker, 255 F.3d 65, 75 (2d Cir. 2001)).  Relevant to our case, the Second Circuit "specifically reserved the question of whether a claim of actual innocence based on newly discovered evidence . . . merits equitable tolling."  Id. at 159–60.

Petitioner makes two claims in favor of equitable tolling; both of them relate to the Honeyman Report and other documents obtained via FOIL requests.[3]  First, Petitioner argues that he is "actually innocent," a claim he bolsters by alleging that the prosecution withheld Brady evidence at trial.  Petitioner suggests that the unknown "negative results" noted in the Honeyman Report may be material to his actual innocence claim, and that therefore this Court should equitably toll the limitations period.  Second, Petitioner argues that even if he untimely filed, he did so only because the prosecution's withholding of the Honeyman Report "lulled" him into inaction.

In his R&R, Magistrate Judge Katz rejects Petitioner's actual innocence claim as procedurally barred because Petitioner failed to file his habeas petition within a year of obtaining the Honeyman Report in 1990.  This Court agrees with Judge Katz's procedural analysis, but addresses Petitioner's actual innocence claim *de novo* to determine whether it is "credible."  See Doe v. Menefee, 391 F.3d 147, 161 (2d Cir. 2004) ("[W]e have instructed district courts faced with untimely petitions in which the petitioner asserts his or her actual innocence to determine, in each case, whether the petitioner has presented a credible claim of actual innocence before ruling on the legal issues of whether such a showing provides a basis for equitable tolling and whether the petitioner must also demonstrate that he or she pursued his or her claim with reasonable diligence.") (citing Whitley v. Senkowski, 317 F.3d 223, 225 (2d Cir. 2003)).  Additionally, this Court examines Petitioner's "lulling" claim *de novo* because it was first raised in the Reply to the R&R.

 1.    *Petitioner's "Actual Innocence" Claim*
        The Second Circuit has yet to answer whether a claim of actual innocence qualifies as an

---

[3] Because Petitioner bring this action *pro se*, this Court construes Petitioner's arguments liberally.  Here, in the purpose of clarity, this Court demarcates Petitioner's equitable tolling claim into three separate justifications.

"extraordinary circumstance" that merits equitable tolling. Before going further, district courts must first determine whether the petitioner's actual innocence claim is credible—if it is not, there is no need for further analysis. See id. at 161 (citing Whitley, 317 F.3d at 225). Thus, when a party brings an untimely habeas petition that raises a claim of actual innocence, the Second Circuit has instructed district courts to undertake the following four-part sequential inquiry:

> (1) Whether petitioner exercised "reasonable diligence" when pursuing his actual innocence claim;
> (2) if petition did not exercise reasonable diligence, whether an actual innocence claim must "be pursued with reasonable diligence in order to raise the issue of whether the United States Constitution requires an 'actual innocence' exception to the AEDPA";
> (3) if petitioner did exercise reasonable diligence or reasonable diligence was unnecessary, whether petitioner made a "credible claim" of actual innocence; and
> (4) whether the United States Constitution requires an "actual innocence exception" to the AEDPA one-year statute of limitations.

See Whitley v. Senkowski, 317 F.3d 223, 225–26 (2d Cir. 2003).

*a.     Did Petitioner exercise "reasonable diligence" in pursuit of his claim?*

The reasonable diligence standard requires a district court to inquire whether a petitioner acted "as diligently as reasonably could have been expected *under the circumstances*[.]" Baldayaque, 338 F.3d at 153 (emphasis in the original). Factors that a court may consider include, but are not limited to, a petitioner's "incarcerated status, education, language skills and financial resources to obtain counsel." Whitley v. Senkowski, 567 F. Supp. 2d 490, 494 (S.D.N.Y. 2008) (citing Baldayaque, 338 F.3d at 153).

Here, Petitioner's education and language skills are demonstrably sufficient for him to understand the legal process, as Petitioner has submitted numerous requests and filed several post-conviction motions *pro se*. Further, there is nothing in the record indicating that Petitioner was confused about the one-year statute of limitations, or that any other circumstance existed that would have prevented him from timely filing had he exercised reasonable diligence in doing so. When considered in light of the fact that Petitioner had access to all the materials necessary to file his habeas petition in a timely manner, Petitioner has not demonstrated that he exercised reasonable diligence in pursuit of his actual innocence claim.

### b. Was Petitioner required to pursue his actual innocence claim with "reasonable diligence"?

District courts have answered this question in the affirmative, holding that "reasonable diligence in pursuing an actual innocence claim is a prerequisite to equitable tolling of the AEDPA statute of limitations." Whitley, 567 F. Supp. 2d at 496 (citing Flanders v. Graves, 299 F.3d 974, 977–78 (8th Cir. 2002); Gildon v. Bowen, 384 F.3d 883, 887 (7th Cir. 2004)). The rationale given is that "a habeas petitioner who has not been reasonably diligent in pursuing a claim of actual innocence arguably has not been impacted by AEDPA's one-year statute of limitations." Id. at 495–96. Additionally, the exercise of reasonable diligence is a prerequisite for equitable tolling under AEDPA for other claims; and there is no reason to presume that this situation should be different. See id. at 496 (citing Baldayaque, 338 F.3d at 152; Smith, 208 F.3d at 17 (internal citations omitted)).

In this case, Petitioner had both the knowledge and ability to assert an actual innocence claim before the AEDPA statute of limitations expired. The limitations period did not stymie Petitioner's ability to assert his actual innocence claim—and therefore, Petitioner was required to exercise reasonable diligence in the pursuit of his claim.

### c. Did Petitioner make a "credible claim" of actual innocence?

Because Petitioner was required to, but failed to, use reasonable diligence while pursuing his actual innocence claim, this Court does not need to address whether Petitioner's actual claim was credible. Nevertheless, even if Petitioner were able to reach this inquiry, he would not succeed in showing that his actual innocence claim was credible.

In making its credibility analysis, a district court should look to the general framework for actual innocence claims provided in Schlup. Doe, 391 F.3d at 161. A petitioner must follow a two-step process: First, he must show "new reliable evidence that was not presented at trial." Second, he must prove it is "more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." Whitley, 317 F.3d at 225 (alteration in original) (quoting Lucidore, 209 F.3d at 114). The "new reliable evidence" standard requires the court to evaluate the evidence both "on its own merits" and "in light of the pre-existing evidence in the record," if appropriate. Doe, 391 F.3d at 161 (citing Schlup, 513 U.S. at 327–28). Even if a petitioner can prove his evidence is reliable, the court must then determine whether a reasonable juror would have nonetheless convicted petitioner. The court must "determine whether new

evidence truly throws the petitioner's conviction into doubt," or whether such evidence "is insufficient to raise a question as to a petitioner's factual innocence." Id. at 162.

In this case, the "new" evidence upon which Petitioner relies is the Honeyman Report, which Petitioner obtained through a post-conviction FOIL request.  However, the only part of the evidence that Petitioner uses is a single line noting that the weapon Petitioner was convicted of possessing was "processed with negative results."  From this single line, Petitioner hypothesizes several possible interpretations of the term "negative results":  that the gun was inoperable; that the gun did not contain Petitioner's fingerprints; and that the gun had not been discharged.  Petitioner provides no reason for this Court to presume that any of these interpretations are accurate, merely urging that his claims are "[not] beyond the realm of possibility" and "[not] too far fetched" to be considered.  Petitioner also refers to a picture of the shotgun that he obtained during a 2005 FOIL request, alleging that this document gave rise to more actual innocence claims.  Petitioner offers no other "new evidence" to support his actual innocence claim.

Applying *de novo* review to the evidence presented, this Court finds Petitioner's claims speculative and insufficient to constitute a credible claim of actual innocence.  First, Petitioner cannot use the Honeyman Report and other post-conviction documents to credibly challenge the validity of his conviction.  The Report is not the type of exculpatory evidence that would legitimately serve as the basis for a habeas challenge; rather, the documents Petitioner presents are merely evidence that at best might help *develop* a pre-existing habeas challenge.  However, no such pre-existing challenge exists.

Second, in the equitable tolling context, the Second Circuit has specifically rejected use of evidence that does not actually challenge a petitioner's conviction because of underlying policy implications:  "[P]risoners could substantially extend the time for filing federal habeas petitions by pursuing . . . applications that do not challenge the validity of their convictions." Hodge v. Greiner, 269 F.3d 104, 107 (2d Cir. 2001).

Third, it is unclear whether the newly discovered evidence has any probative value.  For example, although Petitioner claims that the picture of the shotgun gave rise to additional claims, he fails to explain how or what these claims are.  Petitioner does not explain why a court should give any weight to his hypothetical interpretations of the phrase "negative results."  No documents or testimony are provided that would corroborate Petitioner's interpretations.  On the

other hand, state courts have rejected Petitioner's section 440 claims as meritless.  Additionally, the record contains evidence that specifically disposes of at least some of the Petitioner's hypotheticals—for example, a different detective report ("Hopkins Report") clearly notes that the shotgun was discharged and that shotgun shells were at the scene.

Fourth, the speculative nature of Petitioner's "new evidence" becomes clearer when contrasted with the evidence found sufficient in Schlup.  In Schlup, the Court considered relevant such evidence as (1) testimony by black inmates on behalf of a white male defendant convicted of a racially motivated killing; and (2) key testimony that made it highly improbable that defendant was physically present at the time of the killing.  Id. at 316–17.  In contrast, Petitioner's evidence in the case at bar consists of unsupported hypotheticals.

In short, Petitioner cannot credibly argue that *no* reasonable juror, after considering the record as supplemented by the Honeyman Report, would find Petitioner guilty.

Petitioner also argues that the prosecution's failure to present the Honeyman Report at trial is itself proof that the prosecution is hiding something and that the report must be material to proving Petitioner's innocence.  However, these claims are mere conjecture—Petitioner provides no actual support that the Honeyman Report says or means what he claims.

2.     *Petitioner's "Lulling" Claim*

Petitioner also claims that equitable tolling is justified because the Government's withholding of the Honeyman Report and other documents "lulled" Petitioner into inaction.  In support, Petitioner cites Baldwin v. Brown, 466 U.S. 147 (1984), a civil employment discrimination case where Plaintiff Brown filed a claim with the EEOC, alleging discrimination against her former employer.  Brown claimed that filing a right-to-sue letter was sufficient to toll a statutory requirement that she file a complaint with the EEOC within ninety days.  The Supreme Court rejected Brown's argument, but contrasted its decision with a situation where a party could prove that the defendant's affirmative misconduct had "lulled the defendant into inaction."  Id. at 151.  Applying *de novo* review, I find Petitioner's argument unavailing.  Although Petitioner cites Baldwin for language contained in dicta, the holding in Baldwin is unfavorable to Petitioner.  Rejecting Brown's equitable tolling claim, the Court reasoned that equitable tolling was inappropriate because the statute clearly laid out "what [Brown] must do to preserve her claim, and she did not do it."  Baldwin, 466 U.S. at 151.  Similarly, here the statute

clearly lays out what Petitioner had to do to preserve his right to file his habeas claim—i.e., file within a year of final judgment or discovery of the factual predicate for his claim—and yet he did not do it. There is no indication that Petitioner was confused by the language in AEPDA or by a court's instructions.

Suffice it to say, Petitioner has no proof that the prosecution deceived or lulled Petitioner into believing that he could not file a habeas claim, or that he was not required to file one before the statute of limitations expired. Indeed, Petitioner could have easily filed a petition anytime after his conviction in 1994 was affirmed or after receiving the Honeyman Report in 1990. That he failed to do so, and instead filed several more FOIL requests, fails to demonstrate that he was "lulled into inaction." Rather, the fact that the prosecution did not hand over evidence Petitioner considers important should have spurred Petitioner to file a timely habeas petition alongside his FOIL requests.

## *CONCLUSION*

For the foregoing reasons, Petitioner's motion is DENIED. This Court ADOPTS Judge Katz's R&R and supplements it in order to address Petitioner's actual innocence claim as well as the arguments that were raised anew in the Reply to the R&R. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). As the Petition makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253.

SO ORDERED
September 4, 2011
New York, New York

Hon. Harold Baer, Jr.
U.S.D.J.